SOLOMON FULD, SIMON WEIL, EDWIN MAYER, MARY J. MELGIN, MRS. EDWARD WHITEHILL AND WILLIAM SANDBERG, EXECUTORS OF THE ESTATE OF EDWARD WHITEHILL, DECEASED, RESPONDENTS, v. ELIZABETH B. ADAMS AND HARRY ADAMS, EXECUTORS OF THE ESTATE OF RURIC N. ADAMS, DECEASED, APPELLANTS.

Submitted May 29, 1931—Decided October 19, 1931.

For the respondents, *George A. Bourgeois* and *Samuel M. Garfinkle.*

For the appellants, *Joseph Thompson* and *Walter Hanstein.*

The opinion of the court was delivered by

KAYS, J. This is an appeal from a judgment rendered in the New Jersey Supreme Court in favor of the plaintiffs in

the sum of $3,009 and costs. The case was tried at the Cape May Circuit before his honor, Judge Sooy, Circuit Court judge, and a jury, to whom it was referred for trial. The case arose out of an agreement to purchase certain real estate sold at public auction under stated conditions in the city of Wildwood, Cape May county, wherein the plaintiffs below were the vendees and the defendants, the vendors. Under the conditions of sale the vendees paid down on account of the purchase price the sum of $2,300. The said $2,300 represented ten per centum of the agreed purchase price. At the time of the sale the lots in question were owned by the estate of Ruric N. Adams and Charles H. Shetzline as tenants in common. The estate of the said Ruric N. Adams was the owner of an equal undivided two-thirds interest and the said Shetzline owned the other undivided one-third interest. This sale was held by John A. Ackley & Sons, auctioneers, on August 17th, 1925. Under the conditions of the sale the deed was to be delivered on or before October 1st, 1925, at the office of an attorney-at-law of this state, Robert Bright, North Wildwood, New Jersey, at which time an additional forty per centum of the purchase-money was to be paid and a purchase-money mortgage given for the balance. On said October 1st, the plaintiffs below were prepared and ready to make settlement. On that day, however, a letter was received by Edward Whitehill from the said Robert Bright which contained a statement to the effect that he did not believe the sale would go through for the reason that the property was in litigation in the Court of Chancery; that Mr. Charles H. Shetzline, who owned a third interest in the property, had filed a bill sometime in June for the partition thereof and that the Chancery proceedings had priority over the sale and further stated as follows: "I do not see anything but what the return of the money to you would be the best method for you and your associates. Mrs. Adams did not have the sanction of her co-executor in listing the property. Mr. Shetzline, the one-third owner, is not bound by the listing or sale, not having signed up nor agreed thereto."

This letter was dated September 30th, 1925. After receipt of this letter the plaintiffs below did not attend at Mr. Bright's office and tender the money. In the year 1927, Mr. Samuel F. Garfinkle, an attorney, called on Elizabeth B. Adams and made demand for the return of the deposit money. Mrs. Adams refused to return the money which resulted in the suit and judgment resulting therefrom. A rule to show cause was allowed on the first trial and the verdict set aside as contrary to the evidence. The re-trial resulted in the judgment above mentioned, from which this appeal is taken.

The first ground of appeal argued by appellant is that the court erred in admitting in evidence the letter written by the said Robert Bright to Edward Whitehill, the purport of which is above set forth. The admission of this evidence was objected to on the ground that the authority of Robert Bright to write the same was not proven. We are of the opinion that such was not the case. Bright, himself, testified that he was authorized by Mrs. Adams to take charge of the settlement which was to take place on October 1st. It was admitted that a suit for partition was pending in the Court of Chancery at the time. It therefore appears that this settlement was in the hands of Mr. Bright and that he found an obstacle in existence which would prevent such settlement and so advised the purchasers. As a result the settlement did not take place and none of the parties appeared.

Not only was this letter available to the plaintiffs as evidence which would excuse them from a tender of payment but the admission of Shetzline that he had a one-third interest in the property was also available to the plaintiffs in an effort to show that a tender of the purchase price was not necessary. These two points were at least evidence from which a jury might conclude that the grantors were unable to convey a good and sufficient title to the vendees. Appellant contends that a nonsuit should have been granted for the reasons above set forth. However, the contents of the letter and the admission that Shetzline owned an undivided

interest in the property, constitute evidence from which a jury might conclude that the vendees were excused from a tender of the purchase price and that the vendors were unable to convey a good and sufficient title.

It is next argued that it was error to exclude certain questions asked the witness Bright as to the attitude of Mr. Shetzline about signing a deed. A careful examination of the testimony leads us to the conclusion that these questions were not proper cross-examination. The first question was, "did you know that Shetzline was unwilling to sign that deed?" the second question, "did Mr. Shetzline ever refuse to sign a deed?" and four other questions of like effect. The court sustained the objection to these questions and said, "I sustain the objection on the ground that you are not cross-examining on anything introduced in the direct testimony or in that letter." We think this was a correct ruling, as we find no direct examination bearing on this point.

It is also argued that certain testimony given by another member of the bar, John McMullin, should not have been excluded. McMullin, who appeared to be the attorney of Shetzline, was asked whether Shetzline was willing to sign a deed for the property in question. The answers to such questions would be conclusions only which the witness himself might draw. A witness cannot state over objections his opinion as to the thoughts or purposes of another. They were, therefore, properly excluded by the court. In this connection he was asked, "what I want to know is did he refuse to sign a deed for this property?" Objection was made to the question but the question was not answered nor was there an exception taken to the ruling of the court. It, therefore, will not be considered here. McMullin was then asked whether a deed had been prepared for Mr. Shetzline to sign. This question was overruled. It seems to us that this was unimportant as it made no difference whether or not a deed had been prepared.

The other grounds for appeal deal with the charge and refusal to charge by the court. The refusals to charge to

which objections were taken were to the effect that if the jury should find that the plaintiffs had received Bright's letter and still considered the contract in force, as evidently they did for the reason that they subsequently demanded a settlement, they could not hold the defendants to a default. Such a charge would ignore the fundamental question in the case as to whether or not the defendants were able to convey. It cannot be assumed that they were able to convey as it was admitted that they did not hold title to the entire property. We think, therefore, that the court was justified in refusing to so charge. It is also argued that the court erred in refusing to charge "unless you find that Mr. Bright was authorized to call off the settlement, the defendants were not bound by his letter dated September 30th, 1925." This ignored the question of the apparent authority of Bright which was covered in the court's charge. Court, in his charge, said to the jury in this respect that "irrespective of whether or not the defendants told Bright to write that letter, still the defendants may be bound by his action if the defendants clothed him with the apparent authority to write that letter. In other words, a principal is bound by the acts of his agent which are within the authority particularly vested in him, as well as by those acts of that agent which are within the scope of his apparent authority," and then went on to say, "if he was so placed then the plaintiffs had a right to rely on that letter in so far as that letter would justify them in not attending on the day of settlement. That is a question of fact for your determination, and if you determine that Bright was clothed with the apparent authority and that the plaintiffs were therefore justified by that letter in not attending then I charge you that the plaintiffs were not in default in not attending on the first day of October." We think this part of the charge covered the defendant's request as disclosed by the facts in the case.

The other objections raised by appellants were in reference to the charge of the court respecting the evidence given by Bright and Garfinkle as to the rescision of the contract by

the defendants which would make unnecessary a tender by the plaintiffs. These charges were to the effect that if the defendants on the first day of October could not deliver title and the plaintiffs were not in attendance the plaintiffs would then be excused from attending and were not in default. We do not think that this charge was erroneous due to the fact that it was admitted at the trial by the defendants that they did not have title to the entire property and there was no proof offered to show that a deed had been executed and tendered for the entire interest in the property. There was also objection raised to the charge of the court above referred to, relative to the apparent authority of Mr. Bright. We think the charge relative to his authority, which was left to the jury to determine, was proper. The defendants, owners of a two-thirds interest in the property in question had made a contract with the plaintiffs to deliver a good title to the entire property. The other one-third interest was owned by a party over whom the defendants had no control and who was litigating the premises in question by a partition suit at the time of the agreement and at the time the title was to be passed. No evidence was produced to show that the owner of the one-third interest had executed a deed for his interest to the plaintiffs and no proof was produced to show that the defendants had ever executed a deed for their interest in the property. In addition to this one of the defendants, Mrs. Adams, according to the testimony of the witness Garfinkle, had absolutely refused to convey the property and also refused to return to the plaintiffs the money paid on account.

We are, therefore, of the opinion that the rulings of the court in this case were proper. The judgment below is affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, JJ. 12.

*For reversal*—None.